MILTON McALLISTER V. STATE.

No. 26,480. June 10, 1953.
Rehearing Denied October 14, 1953.

*M. Gabriel Nahas, Jr.,* Houston, for appellant.

*William H. Scott,* Criminal District Attorney, *King C. Haynie,* Assistant Criminal District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

It is alleged that the appellant, while driving a motor vehicle upon a public highway and while under the influence of intoxicating liquor, through mistake and by accident, killed Caleb Starr. On the trial therefor he was found guilty and sentenced to a term of four years in the state penitentiary for the offense of murder without malice.

The facts show that on June 13, 1952, the appellant was traveling on a public highway in East Houston, and was observed by Mr. Jaenicke, who was chief of the East Houston Voluntary Fire Department. Mr. Jaenicke's attention was called to a car which was being driven in an erratic manner. He followed it and observed same for quite a distance down such street or highway. Eventually this car was driven close to a car which was parked on the right hand side of the road on which appellant was then traveling, with a Negro man standing thereby who was attempting to pump up the left hand rear tire on his car. Appellant struck this Negro man, knocked him quite a distance and injured him severely. Appellant then turned his car quickly off to the left side of the road and struck Mr. Caleb Starr, who was on appellant's left hand side of the road in the ditch thereof. He struck Mr. Starr so severely that he died immediately thereafter. Appellant did not stop but continued his driving in the same erratic manner and finally wound up at the Super-Duper Drive-in which was some distance from the scene of the accident. According to his own statement, he walked into such drive-in and ordered four bottles of beer, one after the other, and drank three of them. As he started to drink the fourth bottle the officers walked in and apprehended him. Many of the witnesses testified as to the appellant's drunken condition. Some

witnesses also testified as to his sobriety prior to the time this wreck occurred.

It is the appellant's contention that he was sober but that when he struck this Negro it dazed him so that he remembered nothing else until he waked up in front of this beer tavern.

It is also worthy of note that appellant told the keeper of this beer tavern that he believed that he had hit somebody back up there and did not know what to do about it.

There is only one real question presented on the trial of this case and that is relative to a sample of blood that was taken from the appellant and the analysis thereof which was heard before the jury from a chemist witness. It is the appellant's contention that the blood thus analyzed by the chemist was not shown to have been the same blood that was taken from the appellant's body soon after his apprehension by the officers.

It seems that there is some little confusion as to how the sample of blood reached the office of the State Chemist in Austin. The testimony does show that Don Henry, the arresting officer, was present at the time that Doctor Jones took the blood out of the appellant's vein; that the officer held the container in which the blood was placed after it was taken from the appellant's arm; that he held the test tube while it was being filled; that he put the lid on it, sealed it, and mailed it to Austin, Texas; that the test tube presented in evidence from which the alcoholic content was taken had on it the mark, "6-14-52." The officer testified that appellant was arrested at 12:05 A.M. of the sixth month and the fourteenth day in the year 1952. The witness further testified that he sealed the test tube and mailed it himself; that he took it to the postoffice; and that the tube in the hands of the chemist on the trial was the same tube that he had held while appellant's blood was being placed therein.

Mr. Tullis, the chemist at the Texas Department of Public Safety, testified that he received this tube through the mail along with other evidentiary matters in this case; that the blood in said tube showed that the same contained .28 of one percent of alcoholic content; that appellant was under the influence of intoxicating liquor at the time this blood specimen was taken from him.

The testimony may be confusing to a certain extent as to

how the blood specimen passed through the mail, whether it was in a box with other things, or whether it was in a box by itself. In any event, the testimony shows that the blood taken from the appellant soon after the accident was the same blood utilized by the chemist in ascertaining the alcoholic content thereof.

We are cited to the case of Brown v. State, 156 Tex. Cr. R. 144, 240 S.W. (2d) 310, but we do not think that same is applicable to the present case. In the present instance, it was shown by the witness Henry that he furnished the container for the blood, that he saw the blood come out of the defendant's arm, that he put the lid on the tube, sealed it and mailed it to Austin; and that the test tube exhibited on the trial by the chemist was the same tube that he sent to Austin for analysis. From the testimony of Henry we quote:

"Q. You saw the blood come out of McAllister's arm and then into this tube? A. Yes."

We think that connects the tube utilized in evidence at that time with the fact that it was the tube that contained the blood that came out of the appellant's arm, as well as the same tube that was marked: "6-14-52." Under the circumstances, we think the law has been complied with, and that the Brown case is not controlling herein because of different facts in the testimony.

There is no other testimony complained of in the appellant's brief save that relating to the alleged failure to trace this blood from the appellant into the hands of the State Chemist who testified therefrom. We think the case of Herriage v. State, 158 Tex. Cr. R. 362, 255 S.W. (2d) 516, is pertinent to the question at issue on this point. It seems to us that the sample of blood has been sufficiently traced through the mail into the hands of the State Chemist.

Finding no error in the record, the judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BELCHER, Judge.

Appellant again urges error in that the blood specimen taken from him was not identified as being the same blood analyzed by the chemist, whose findings therefrom were introduced in evidence.

In addition to that set forth in our original opinion, we observe that Officer Henry testified that he marked and tagged the tube containing the blood specimen, before it was mailed to Austin. Some credence then should be given his testimony when he was handed a tube on the trial and said that it was the one containing the sample of blood taken from the appellant.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.